UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN E. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:23-CV-23-ACL |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM</u>**

Plaintiff Brian E. Jones brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of his application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite his severe impairments, Jones

was not disabled because he could perform jobs existing in significant numbers in the national

economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.   Procedural History

Jones filed his application for benefits on March 10, 2021.   (Tr. 152-57.)   He claimed he

became unable to work due to his disabling impairments on August 1, 2020.  *Id.*  Jones alleged

disability due to bipolar disorder, schizoaffective disorder, major depressive disorder, anxiety

with panic disorder, restless leg syndrome, GERD, and hypertension.  (Tr. 183.)  He was 43

years of age at his alleged onset of disability date.  (Tr. 20.)  Jones' application was denied

initially.  (Tr. 89-93.)  On May 17, 2022, after holding a hearing, an ALJ denied Jones'

application.  (Tr. 12-22.)  On March 21, 2023, the Appeals Council denied Jones' claim for

review.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the

Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Jones first argues that the ALJ did not analyze "the treating psychiatric

nurse's opinion correctly under 404.152(c)."  (Doc. 11 at 7.)  He next argues that the "RFC

constructed by the ALJ is not supported by the weight of the evidence."  *Id.* at 12.

## II.  The ALJ's Determination

The ALJ first found that Jones has not engaged in substantial gainful activity since March

10, 2021, his application date.  (Tr. 15.)  He next concluded that Jones had the following severe

impairments: substance abuse of alcohol and drugs, affective disorder, and anxiety disorder.  *Id.*

The ALJ found that Jones did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  *Id.*

As to Jones' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but with the
> following non-exertional limitations: he can understand, remember
> and carry out simple work instructions and tasks at a SVP 2 level.
> He can have occasional contact with coworkers, supervisors and
> the public.  He should not do teamwork types of job duties.  He
> should not work with the public as a primary job duty.

(Tr. 17.)

The ALJ found that Jones was unable to perform any past relevant work but was capable of performing other jobs existing in significant numbers in the national economy, such as linen room attendant, laundry worker, and production helper.   (Tr. 20-21.)   The ALJ therefore concluded that Jones was not disabled.   (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on March 10, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 22.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*  Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*  If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Jones argues that the ALJ erred in analyzing the opinion of the treating psychiatric nurse practitioner and in determining his RFC.  The undersigned will address these claims in turn.

### A.  Opinion Evidence

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c and 416.920c.  Under these regulations, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency,

the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies.   20 C.F.R. §§ 404.1520c(c), 416.920c(c).   An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."   20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors ... in [the] determination or decision."   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   The Regulations provide as follows regarding supportability: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).   As to consistency, the Regulations provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.   *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)); *see also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D.

Mo. Sept. 29, 2021).   An ALJ need not explain in his or her decision how he or she considered the other factors.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Dianna Phares, Ph.D., DNP, PMHNP-BC, FNP-BC, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on March 25, 2022.   (Tr. 764-66.) She expressed the opinion that Jones had mild limitations in his ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, and understand and remember complex instructions; and moderate limitations in his ability to carry out complex instructions and make judgments on complex work-related decisions.   (Tr. 764.)   Dr. Phares explained that Jones' memory was impaired for recent events and complex tasks and instructions, and that he has a history of auditory and visual hallucinations.   *Id.*   She stated that Jones "believed aliens and deceased father were talking to him."   *Id.*   Dr. Phares found that Jones had extreme limitations in his ability to interact appropriately with the public, supervisors, and co-workers; and in his ability to respond appropriately to usual work situations and changes in a routine work setting.   (Tr. 765.)   As support, Dr. Phares stated that Jones becomes anxious and angry when interacting with society, has delusions regarding his role in society, and has unrealistic views of functioning in society. *Id.*   She further stated that Jones believes that the "frequency of sounds and music and inner vibrational levels cause balance and the world's vibrations do not match his."   *Id.*   Dr. Phares found that Jones would be absent from work more than four days a month, would be off task 25 percent or more of the workday, and would need to take unscheduled breaks each hour for 20 minutes to regroup during the workday due to panic attacks, anxiety, depression, and anger. (Tr. 765-66.)   She indicated that Jones' disability began on August 1, 2020.   (Tr. 766.) Finally, Dr. Phares stated that Jones has a history of alcohol abuse to self-medicate, and a history

of DWI.  *Id.*   She noted that Jones had two relapses in the previous eight years, but last drank alcohol in 2019 and has no desire to use alcohol.  *Id.*

The ALJ found Dr. Phares' opinion "not persuasive."  (Tr. 20.)  He stated that Dr. Phares' opinions are "inconsistent with her own treatment records, which indicated that the claimant is still drinking and was not forthcoming about that to her throughout her records."  *Id.* He noted that Dr. Phares does not discuss the effect of Jones' alcohol and drug abuse and states that Jones' last alcohol use was 2019, "which is patently untrue and this is established in her own records."  *Id.*   The ALJ states that Dr. Phares' opinion is a "check box type of form" without citations to the record to support each limitation.  *Id.*   Instead, Dr. Phares' opinions "appear to be based primarily on the claimant's subjective complaints."  *Id.*   The ALJ further states that Jones' activities of daily living indicate that Jones is more capable than Dr. Phares indicates.  *Id.* He states that the effectiveness of Jones' medication and treatment indicate "less severe mental limitations."  *Id.*   Finally, the ALJ notes that no other medical opinion supports Dr. Phares' opinions, and they are inconsistent with the more recent prior administrative medical findings. *Id.*

Jones argues that the ALJ erred in failing to articulate his consideration of the supportability and consistency factors.   He also contends that the ALJ erred in analyzing Jones' alcohol and drug use, and in "playing doctor."   The undersigned will discuss the latter claims when addressing Jones' RFC argument.

### 1.  Supportability

The ALJ cited many reasons for finding Dr. Phares' opinion was not supported by her own records.   First, he noted that Dr. Phares' statement that Jones last used alcohol in 2019 was contradicted by her own records.   For example, in January 2022, Jones reported to Dr. Phares

that he last used alcohol "about 14 months ago."   (Tr. 616.)   At an August 3, 2020, emergency

room visit for chest pain, Jones reported that he "drinks occasionally."   (Tr. 272.)   Laboratory

testing from two days prior revealed an ethanol level of 83, with levels 0 to 10 being normal.

(Tr. 312.)   Jones admitted after being confronted that he "drank heavily" the previous night.

(Tr. 314.)   He was told by the examining physician that his chest pain was from drinking too

much and was advised to quit drinking. (Tr. 314.)   Jones was noted to be using alcohol by other

providers in November 2020, June 2021, and November 2021.   (Tr. 297, 584, 769, 601.)   As

such, Dr. Phares' statement that Jones last used alcohol in 2019 is contradicted by her own

records and other medical evidence.   The ALJ also noted that Dr. Phares does not address the

fact that Jones was not forthcoming about his alcohol abuse and does not discuss the effect of

Jones' alcohol use on his impairments.

The ALJ next notes that Dr. Phares' opinions are unsupported because she does not cite

evidence in the record to support the limitations but instead appears to base them primarily on

Jones' subjective complaints.   (Tr. 20.)   He explains that the effectiveness of Jones' medication

and treatment, as well as Jones' activities of daily living, indicate less severe mental limitations.

*Id.*   Earlier in his opinion, the ALJ cited specific findings in Dr. Phares' treatment notes that

reveal Jones' symptoms improved greatly with medication.   (Tr. 18-20.)   These records are

summarized below:

In September 2020—one month after Jones' alleged onset of disability—Jones reported

that his anxiety had improved and he was no longer feeling down or depressed.   (Tr. 18, 443.)

Previously, he would get anxious around people or going in public, "but this is much improved."

(Tr. 443.)   He was able to concentrate.   *Id.*   Dr. Phares noted that Jones had a history of

"hearing aliens talking to him, but this is gone with Abilify.[1]    His mood is no longer up and down."   *Id.*   She further stated that Jones:

> Has completed groups for AUD three times a month.   Attends Faith Walk weekly.   Is planning to attend SATOP and planning to get his driver's license back after quarantine.   Is no longer having panic attacks several times a week. Previously went to the ER 4 times in one week and was told it was anxiety. Feels meds are working well and does not need a change.   Anxiety is mild and manageable with medications.

*Id.*   On examination, Dr. Phares noted Jones' mood was anxious, but otherwise his examination was normal.   (Tr. 445.)   Specifically, Dr. Phares found Jones was cooperative, his speech was clear, his thought process was logical, his perception was normal, no hallucinations were reported or evidenced, his thought content was normal, no delusions were reported, his cognition was normal, his intelligence was average, and his insight and judgment were normal.   *Id.*   Dr. Phares' findings were unchanged at Jones' November 2020 follow-up.   (Tr. 415-17.)   She noted that Jones was staying busy remodeling his mother's house.   (Tr. 415.)   Dr. Phares' findings were unchanged on January 5, 2021.   (Tr. 382-84.)   In April 2021, Jones reported that his medications were working well, but requested an increase in his anxiety medication.   (Tr. 560.)   Dr. Phares continued to note only anxiety on examination.   (Tr. 562.)   She increased Jones' medication.   (Tr. 565.)   On July 6, 2021, Dr. Phares indicated that Jones had been inpatient the previous weeks for five days due to having mood swings, seeing his dead father, hearing his father's voice, and being manic.   (Tr. 749.)   On examination, Dr. Phares noted only an anxious mood.   (Tr. 751.)   On September 1, 2021, Dr. Phares noted that Jones had stopped one of his medications and was now "having mild mood swings."   (Tr. 700.)   Her examination findings were unchanged.   (Tr. 702.)   She increased Jones' dosage of Abilify.   (Tr. 703.)   On

---

[1] Abilify is an antipsychotic drug indicated for the treatment of mood disorders and hallucinations.   *See* WebMD, http://www.webmd.com/drugs (last visited September 25, 2024).

October 1, 2021, Dr. Phares indicated that Jones' mild mood swings "stopped with Abilify." (Tr. 673.)   On October 19, 2021, Jones' mood swings and feelings of anger returned.   (Tr. 645.) On examination, Jones was depressed and anxious.   (Tr. 647.)   Dr. Phares adjusted Jones' medications.   (Tr. 648.)   On January 19, 2022, Jones reported that his mood swings were better, but he was frustrated with ADHD symptoms of difficulty concentrating that interfered with his ability to read or watch a movie.   (Tr. 620.)   Dr. Phares started Jones on an ADHD medication. *Id.*

The ALJ's finding that Jones' treatment and medications were effective is supported by Dr. Phares' records summarized above.   As such, the ALJ did not err in concluding that Dr. Phares' opinions were not supported by her own records.

**2. Consistency**

With regard to the consistency factor, the ALJ pointed out that no other medical opinion supports Dr. Phares' opinions, and that her opinions are inconsistent with the more recent prior administrative medical findings.   (Tr. 20.)

On June 15, 2021, Steven Akeson, Psy.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity assessment.   (Tr. 69-73.)   Dr. Akeson expressed the opinion that Jones had moderate limitations in many areas but retained the ability to understand and remember simple instructions, carry out simple work instructions, maintain adequate attendance and sustain an ordinary routine without special supervision, interact adequately with peers and supervisors, and adapt to most usual changes common to a competitive work setting. *Id.*   The ALJ found that the prior administrative medical findings were "generally consistent with the overall medical evidence, near normal mental status and physical examinations, and the claimant's treatment notes indicating improvement in symptoms with medication and treatment."

(Tr. 20.)   He further noted that Jones' daily activities, including his ability to remodel his mother's house, clean, do laundry, and mow, support the findings.   *Id.*   Finally, the ALJ cited the consultants' "unique, expert training in the evaluation of disability claims."   *Id.*

The ALJ accurately found that Dr. Phares' opinions are inconsistent with those of Dr. Akeson and provided sufficient rationale for finding the opinion of Dr. Akeson persuasive.   He also considered Jones' reported daily activities in finding Dr. Phares' opinions inconsistent with the record.

In sum, the ALJ properly evaluated Dr. Phares' opinion under the regulations.   His findings regarding the supportability and consistency factors are supported by substantial evidence.

### B.  RFC Determination

Jones next argues that the ALJ's RFC determination is not supported by the weight of the evidence.   He contends that the ALJ did not consider the waxing and waning of Jones' psychiatric problems and, instead, improperly "played doctor" in assessing his RFC.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v.*

*Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ limited Jones to simple work, with only occasional contact with co-workers, supervisors, and the public; and no teamwork-types of job duties or a primary job duty of working with the public.   (Tr. 17.)   In determining Jones' RFC, the ALJ first conducted a thorough summary of the medical evidence and Jones' described daily activities.   The ALJ then concluded that, "[o]verall, the record indicates that the claimant's mental symptoms can be adequately controlled with medication and treatment."   (Tr. 18.)

Jones first contends that the ALJ misunderstood the nature of psychiatric impairments and did not consider the waxing and waning of symptoms.   "Recognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation." *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 984 (E.D. Mo. 2019) (citing *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Here, the ALJ did not merely cite a few isolated instances of improvement in Jones' medical records.   Instead, Dr. Phares consistently indicated in her treatment notes from September 2020 through January 2022, that Jones' anxiety around people had improved, he no longer heard voices since starting Abilify, he no longer experienced panic attacks multiple times a week, and his mood swings had improved.   Jones' mental status examinations were normal,

other than his anxious mood.   To the extent that Jones' condition was controlled by medication, it cannot be considered disabling.  *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

The ALJ also acknowledged Jones' instances of exacerbation of symptoms.   He noted that Jones received emergency room treatment on two occasions since his alleged onset of disability.  (Tr. 18.)   In June 2021, Jones presented to the emergency room with suicidal ideation.  (Tr. 18, 769.)   Jones was positive for alcohol and amphetamine abuse and reported that he drank a pint of vodka in an attempt to calm himself down when he was feeling extremely anxious and agitated.  (Tr. 769.)   His discharge diagnoses two days later were amphetamine abuse, alcohol intoxication, suicidal ideations, and anxiety.  (Tr. 772.)   The ALJ pointed out that Jones was not diagnosed with a psychotic or bipolar disorder.  (Tr. 18.)   In November 2021, Jones presented to the emergency room with complaints of having seizures or staring spells with confusion afterwards.  (Tr. 18, 601.)   Jones became "irate," when asked to undergo blood work and admitted to using some alcohol that day.  *Id.*   He left against medical advice. *Id.*  The ALJ concluded that the record reveals Jones only has suicidal ideation and a need for emergency services when he has been abusing substances.  (Tr. 19.)

Jones argues that the ALJ erred in failing to follow the process required by the regulations and Social Security Ruling ("SSR") 13-2p when conducting a drug abuse or alcoholism ("DAA") materiality inquiry.   This argument lacks merit.

If alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied.  *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003).   The claimant has the burden of proving that drug and alcohol abuse was not a contributing factor material to the disability determination.  *Id.*   However, "[t]he plain text of the relevant regulation requires the ALJ first to determine whether [a claimant] is

disabled." *Id.* at 694 (citing 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95. *See also* SSR 13-2p ("Under the Act and our regulations, we make a DAA materiality determination only when: i. We have medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder, and ii. We find that the claimant is disabled considering all impairments, including the DAA."). Drug addiction or alcoholism is "material" if the individual would not be found disabled if alcohol or drug use were to cease. *See* 20 CFR § 404.1535.

In this case, the ALJ considered Jones' abuse of alcohol and drugs as a severe impairment. The ALJ, however, found that considering all of Jones' impairments, *including the alcohol and drug abuse*, Jone was *not* disabled. Because the "condition precedent" of a finding of disability is not present in this case, then the ALJ was not required to perform the analysis in 20 CFR § 404.1535.

Jones next contends that the ALJ erred in failing to find an extreme impairment in Jones' ability to interact socially. He points to his April 2021 Function Report, in which he states that he "somedays will not get out of bed or leave [his] room for days;" and reported difficulty getting along with family, friends, and neighbors. (Tr. 203.) He stated that people "frustrate and anger me. I often feel I'm smarter than other people." (Tr. 206.) Additionally, Jones

notes that he testified at the hearing that he does not have many friends because he lives in "a different reality" than others.   (T. 50.)

The record reflects that the ALJ considered Jones' reports of social difficulties as set out above but found that they were not entirely consistent with the record.   Dr. Phares consistently noted Jones' reports that his anxiety around people and going in public had significantly improved.   Further, Dr. Phares found Jones was cooperative during examinations, and noted no abnormal behavior.   Jones admitted he had never been fired from a job due to problems getting along with other people.   (Tr. 207.)   He also reported having a good relationship with his mother, with whom he lived.   (Tr. 696.)   The record supports the ALJ's finding that Jones had moderate, rather than extreme, limitations in his ability to interact socially.   The ALJ accounted for these limitations when formulating Jones' RFC.

The undersigned finds that the RFC determination is supported by substantial evidence on the record as a whole.   Although Jones argues that the ALJ erred in "playing doctor," it is the role of the ALJ to formulate the RFC based on the medical and other evidence.   In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.   *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).   He considered Jones' ongoing symptoms of anxiety, depression, and difficulty concentrating when restricting him to a limited range of simple work.   The ALJ additionally limited Jones' contact with others due to his social difficulties.   The ALJ's RFC determination is consistent with the prior administrative medical findings and the examination findings of Dr. Phares.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.


/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2024.